FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

2016 MAY -2  P 3: 55

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | |
|---|---|
| **TIRAY ONLEY, #412-568,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **WEXFORD HEALTH SOURCES, INC.,** *et al.,* | * |
| | * |
| **Defendants.** | * |

Case No.: GJH-15-595

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

Tiray Onley filed a civil rights complaint under 42 U.S.C. § 1983, seeking unspecified money damages against Wexford Health Sources, Inc. ("Wexford"), two of its employees, "Nurse Katrina" and "Nurse Manager Jen," and four Maryland Division of Correction (DOC) employees, Sergeant Valentine Ning, Officer Robert Duvall, Major Rosalind Sample, and Captain Yvonne Green (collectively, the "Correctional Defendants").[1] Onley, a self-represented prisoner, alleged that while he was housed at Central Maryland Correctional Facility ("CMCF"), prison health care providers failed to provide appropriate follow up treatment and referral to a specialist to treat a serious shoulder injury before clearing him to resume a work detail. Onley also alleged that Correctional Defendants sent him out on a work detail without medical clearance, resulting in additional injury to his right shoulder. ECF No. 1 at 3.[2]

---

[1] The Clerk shall amend the docket to reflect the Correctional Defendants full names.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Wexford, a corporate entity not amenable to suit under § 1983, was dismissed by this Court on December 14, 2015. ECF Nos. 36 & 37. The two nurses allegedly employed by Wexford, "Nurse Katrina" and "Nurse Manager Jen," are not properly identified and thus have not been served with notice of this action; they, too, are entitled to dismissal without prejudice at this juncture.

Pending is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed on behalf of the Correctional Defendants, ECF No. 32, and Olney's pleading that will be construed, in part, as a response in opposition to that motion. ECF No. 34. No hearing is necessary to resolve the issues presently pending. *See* Local Rule 105. (D. Md. 2014). For the following reasons, the Correctional Defendants' Motion, construed as a motion for summary judgment, will be granted.

## I.   STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, however, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

2

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont, supra*, 637 F.3d at 448–49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To adequately raise the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321,

at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 Fed. Appx. 274 (4th Cir. 2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party that fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court served as the functional equivalent of an affidavit." *Id.* at 244–45 (citations and internal quotation marks omitted).

Here, Onley, who has received copies of the exhibits that accompany the dispositive motion, has not requested additional material needed to defend Defendants' motion, nor has he filed an affidavit under Rule 56(d), suggesting that additional discovery is needed. Thus, the

Court is satisfied that it is appropriate to address Defendants' motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that Rule 56(a)'s standard does not mean that any factual dispute will defeat the motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48, 106 S.Ct. 2505 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). Because Onley is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007). But the Court must also abide by its "'affirmative' obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (citations and internal quotation marks omitted).

## II.   DISCUSSION

### A.  Plaintiff's Allegations

Onley alleges that around August 20, 2014, he injured his shoulder while lifting weights and was sent to a Carroll County hospital emergency room ("ER"). ECF No. 1 at 3; ECF 34 at 1–

2. The ER staff treated his injury and released him with instructions that he should see an
orthopedic specialist in two weeks. ECF No. 1 at 3; ECF No. 34 at 2. Onley was taken to Jessup
Regional Hospital and cleared to return to CMCF. ECF No. 1 at 3; ECF No. 34 at 2. Onley states
that the CMCF medical provider "did not follow the instructions of the ER doctor" but instead
allowed Defendant Ning to return him to a road crew, where he sustained further damage to his
right shoulder. ECF No. 1 at 3.

Onley was housed at CMCF from January 13, 2014 until his transfer to Maryland
Correctional Training Center ("MCTC") on November 21, 2014. ECF No. 32-8 at 1. He filed
this Complaint on March 2, 2015. On March 9, 2015, the Court ordered Onley to supplement his
Complaint to name the medical and correctional personnel alleged to have caused his injury.
ECF No. 3. Onley complied, ECF No. 5, but also filed correspondence alleging that he was
suffering retaliation at the hands of MCTC medical and correctional staff because he had filed
the instant lawsuit and continued to fight for better care for his shoulder condition.[3] ECF No. 4;
*see also* ECF No. 34 at 1, 6–13. While his allegations concerning treatment at DOC facilities
other than CMCF fall outside the purview of his initial Complaint and are not at issue here, his
allegation that he was improperly transferred from CMCF before medical treatment of his
shoulder was resolved, *see* ECF No. 34 at 5, 14, must be addressed in the context of this lawsuit.

### B. Defendants' Responses

Defendants Duvall, Sample and Green contend that none of Onley's allegations are
directed specifically at them. In support of this argument, Duvall has submitted a declaration
under oath indicating that after Onley injured his shoulder lifting weights, a "medical hold" was
placed on his assignment to a work crew. ECF No. 32-3 at ¶ 5. Duvall further avers he was off

---

[3] Medical records reveal that Onley, now in his early 40s, has a history of chronic recurrent anterior shoulder
dislocations. ECF No. 32-7 at 46, 150, 238.

6

duty on the day that Onley reinjured his shoulder, and had no involvement with Onley's assignment to a road crew or in choosing the work that Onley performed. *Id.* at ¶ 6. Duvall also states that he was told that Onley requested to return to the road crew after his injury. *Id.* at ¶ 8.

Green was a shift commander at the time of Onley's injury. ECF No. 32-5 at ¶ 4. In her declaration, Green indicates she played no role in determining whether a prisoner was medically fit to serve on a road crew. *Id.* at ¶ 7. Green was present when Onley returned from the work crew with a dislocated shoulder, and was informed that his shoulder was reinjured during the crew's return trip in the van when Onley turned around in his seat to speak to a fellow prisoner. *Id.* at ¶ 8.

At the time of Onley's injury, Sample was second-in-command at CMCF, but had no immediate interaction with details of the road crew or the assignments of prisoners to the work details. ECF No. 32-6 at ¶ 4. Sample was unaware that Onley expressed a desire to return to a work crew after his initial injury or that the medical hold was removed, permitting his return. *Id.* at ¶ 7.

Ning, however, is specifically mentioned in Onley's pleadings, as she is the detail supervisor for CMCF road crews. Ning notes in her declaration that she works the 11 p.m. to 7 a.m. shift, and work crews leave in the morning prior to the end of her shift and return following her shift, after 2 p.m. ECF No. 32-4 at ¶¶ 4–5. She indicates that Onley had received a "medical hold" several days prior to the alleged work crew injury after he injured his shoulder lifting weights, and that he asked medical staff to remove the hold in order to be assigned to another road crew. *Id.* at ¶¶ 7–8. Ning was not on duty at the time the medical hold was removed. *Id.* at ¶ 10.

The medical records submitted in support of the Correctional Defendants' Motion reveal the following pertinent information. On August 21, 2014, Onley was examined by medical personnel after he dislocated both shoulders while lifting weights. ECF No. 32-7 at 265–66.[4] Records reflect that he had suffered recurrent bouts of shoulder dislocation for roughly 10 years. *Id.* at 218. Onley was seen by medical staff daily from August 22 through August 26, 2014, when he was discharged from the infirmary. *Id.* at 246–64. An August 25, 2014 medical assessment report states that Onley was "adviced [sic] to immobilize [sic] shoulder, no sports or stren[uous] activity." *Id.* at 252. He was also recommended for bottom bunk status. *Id.* at 248. No mention of Onley's work assignment or work restriction is contained in the medical records. During an August 28, 2014 follow-up examination, Onley was told to follow up in two weeks to obtain an orthopedic evaluation. *Id.* at 243–45.

Neither the record nor the parties indicate when Onley returned to work after his release from the infirmary. On September 11, 2014, Onley returned to the infirmary after he dislocated his right shoulder while trying to turn around or open a window on the work detail van. *Id.* at 242.

Onley was transferred from CMCF following a November 3, 2014 adjustment conviction for violation of institutional rules. ECF No. 32-14 at 1.

### C. Analysis

Onley correctly states that his claim against the Correctional Defendants arises under the Eighth Amendment. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, *see Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909 (1976), and "[s]crutiny under the Eighth Amendment is not limited

---

[4] The voluminous medical record, ECF No. 32-7, has been filed separately as a lengthy exhibit. It is not electronically filed as part of the case record.

to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate that the actions of the defendants—or their failure to act—amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837, 128 S. Ct. 1970 (1994).

Prisoners may also state an Eighth Amendment claim as to the conditions under which they are confined. Under the Eighth Amendment, conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347, 101 S. Ct. 2392 (1981). In order to establish the imposition of cruel and unusual punishment based on the conditions of confinement, a prisoner must prove two elements—that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298–300).

The objective prong of an Eighth Amendment claim requires proof of a serious or significant physical or mental injury *resulting from the challenged conditions, see Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (emphasis added); *see also Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003), or, in the context of interference with medical care, evidence that a known excessive risk of harm to the prisoner's health or safety was disregarded. *Wilson*, 501 U.S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dept. of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

Onley states that Ning received verbal clearance from "Nurse Katrina" indicating Onley could return to the road crew, and that Duvall supervised the crew.[5] ECF No. 5 at 1. While his medical records indicate that his condition was chronic and Onley ultimately would require surgery, nothing suggests that the nursing staff or any of the Correctional Defendants knew or should have known that a return to the road crew was in and of itself injurious to his health. The medical record does not imply that Onley's September 11, 2014 shoulder dislocation was in any way attributable to his work assignment, but rather that it occurred as a result of a mundane movement turning to open a window while in a vehicle after the day's activities had ended. Onley has therefore not satisfied his burden of proof as to the first element based on the facts of this case.

---

[5] Nothing suggests that Onley was forced or threatened to return to the work crew; instead, it is appears that Onley wanted to return to work as soon as possible.

Case 8:15-cv-00595-GJH   Document 38   Filed 05/02/16   Page 11 of 13

His proof of the second element also fails. To establish a sufficiently culpable state of mind on the part of Defendants, there must be evidence that a known excessive risk of harm to the prisoner's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, Defendants must know the prisoner faces serious danger to his safety and then fail to protect the prisoner from that danger. *See Brown*, 612 F.3d at 723; *Case*, 301 F.3d at 607.

Defendants' actions do not subject them to liability unless, "in light of preexisting law the unlawfulness of the actions is apparent." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)). "We do not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F. 3d 645, 650 (4th Cir. 2007). The record is devoid of any hint that Defendants pushed Onley to return to duty against medical advice. Further, the injury he sustained on September 11, 2014 did not occur while Onley was completing his job assignment,[6] but rather while he was in a van returning to the facility after completion of his job assignment. No bright line was crossed in assigning Onley to a work crew following his August 2014 shoulder injury.

Even if the named Defendants had an obligation to inquire further as to whether Onley was fit for duty, which is not the case here, the situation as described by Onley was not so severe that Defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006); *see also Beveratti v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997).

---

[6] Onley describes his job assignment as "using a weed eaters" to cut weeds and grass along the highway. ECF 34 at 3.

11

With respect to Onley's retaliation claim, to make out a prima facie case that his transfer from CMCF occurred in retaliation for his insistence that he be provided surgery for his shoulder condition, Onley bears the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind Defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568 (1977). In the prison context, Onley must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *See Rizzo v. Dawson*, 778 F.2d 527, 532 & n.4 (9th Cir. 1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id.* at 532.

Retaliation claims are treated with skepticism in the prison context, because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). Further, in order to prevail on a claim of retaliation, Onley "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams*, 40 F.3d at 75.

It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment on a retaliation claim in this context. *Compare Burton v. Livingston*, 791 F.2d 97, 100–01 (8th Cir. 1986) (holding that "complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim"), *with Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("'A complaint which alleges retaliation in wholly

12

conclusory terms may safely be dismissed on the pleading alone.'"); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Nevertheless, the Fourth Circuit has explained:

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694 (1972)).

When compared to the uncontroverted evidence submitted by Defendants, Onley's transfer appears to have occurred due to an independent, legitimate cause, namely a violation of institutional rules. His transfer from CMCF does not implicate a constitutional right. Thus, Onley has failed to establish a violation of his Eighth Amendment rights based on the actions of the named Correctional Defendants.

## III.    CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion is granted and this action is dismissed. A separate Order follows.

Dated: May ___, 2016

_____
GEORGE J. HAZEL
United States District Judge